UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Merchant Advisory Group,

       Plaintiff,

v.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-3415 ADM/JJK

Merchants Advisory Group, LLC,

       Defendant.

_____

Robert Clary Esq., Owens, Clary & Aiken, LLP, Dallas, TX, on behalf of Plaintiff.
_____

## I.  INTRODUCTION

In September 2014, Merchant Advisory Group ("Plaintiff") sued Merchants Advisory Group, LLC ("Defendant" or "MA LLC") on five counts: (1) infringement of federally registered trademarks; (2) false association; (3) common law trademark infringement; (4) common law unfair competition; and (5) deceptive trade practices.  Compl. [Docket No. 1] ¶¶ 27-66.  No answer has been filed and no appearance has been made on behalf of Defendant.  On October 7, 2014, the Clerk of Court entered Default against Defendant.  Clerk's Default Entry [Docket No. 11].  On November 12, 2014, Plaintiff moved for final default judgment and permanent injunctive relief enjoining Defendant from using Plaintiff's registered trademarks.  Pl.'s Appl. Final Default [Docket No. 12].  For the reasons discussed below, Plaintiff's motion for final default judgment and injunctive relief is **GRANTED**.

## II.  BACKGROUND

Plaintiff provides electronic payment services for business merchants.  Pl.'s Appl. Final Default at 2.  Plaintiff has two registered trademarks (or "marks"), both first used in commerce

in 2007.  The marks are: (1) "MERCHANT ADVISORY GROUP" (U.S. Registration No. 4,484,659) and (2) "MAG MERCHANT ADVISORY GROUP" (U.S. Registration No. 4,484,660).  Compl. at pp. 27-28.  Plaintiff alleges that Defendant began infringing on the marks in 2013 by using "MERCHANT**S** ADVISORY GROUP" and "MAG" to describe its payment processing services for merchants.  Pl.'s Appl. for Final Default at 5 (emphasis added).  Plaintiff sent several letters to Defendant requesting that it immediately cease using Plaintiff's protected marks.  Defendant never responded and continues to use Plaintiff's marks.  Id.

### III.  DISCUSSION

After default is entered, factual allegations in a complaint are taken as true.  Brown v. Kenron Aluminum & Glass Corp., 477 F.2d 526, 531 (8th Cir. 1973) ("If the court determines that the defendant is in default, his liability to the plaintiff is deemed established . . . .  The allegations of the complaint except to the amount of damages are taken as true.") (citing 3 Barron & Holtzoff, Federal Practice & Procedure § 1216, pp. 85-86 (1958).  However, where injunctive relief rather than monetary damages is sought, it "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  Murray v. Lene, 595 F.3d 868, 871 (8th Cir. 2010) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998)).

To prove trademark infringement, a plaintiff must show that (1) it owns valid, protectable marks, and (2) a likelihood of confusion exists between the plaintiff's marks and the defendant's marks.  3M Co. v. Mohan, Case No. 09-1413, 2010 Lexis 124672, *43 (D. Minn. 2010); See also

15 U.S. Code § 1114.[1]  Under the Lanham Act, registration of a trademark is prima facie evidence of registration validity, the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate of registration.  See 15 U.S.C. § 1057(b); General Mills Inc. v. Kellogg Co., 824 F.2d 622, 626 (8th Cir. 1987).  In this case, Plaintiff has produced certified copies of the registrations showing that it is the owner of federally registered mark numbers 4,484,659 and 4,484,660.  Compl. at 32-33.  Thus, the only question that remains is whether confusion is likely based on Defendant's use of Plaintiff's marks.

Courts consider six factors when analyzing the likelihood of confusion:  (1) the strength of the trademark; (2) the similarity between the parties' marks; (3) the competitive proximity of the parties' products; (4) the alleged infringer's intent to confuse the public; (5) evidence of any actual confusion; and (6) the degree of care reasonably expected of the plaintiff's potential customers.  Mohan, 2010 Lexis 124672 at *43.  Here, all six factors weigh in favor of Plaintiff.

The strength of a mark is determined by the inherent conceptual distinctiveness and its commercial strength in the marketplace.  Mars Musical Adventures, Inc. v. Mars, Inc., 159 F. Supp. 2d 1146, 1150 (D. Minn. 2001).  There are four categories of conceptual distinctiveness: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary.  Id.  Generic marks are afforded no protection because they are used by the general public to identify a category of goods.  Id.  On

---

[1] Because Plaintiff's state and common law claims are coextensive with its claims under the Lanham Act, the Court need only consider Plaintiff's claims under the Lanham Act.  See 3M Co. v. Mohan, Case No. 09-1413, 2010 Lexis 124672 (D. Minn. 2010) ("the court does not independently analyze Plaintiffs' state law claims or Plaintiffs' common law claim because the three claims are coextensive with the Lanham Act claims") (citing DaimlerChrysler AG v. Bloom, 315 F.3d 932 n.3 (8th Cir. 2003)).

the other end of the spectrum, arbitrary and fanciful marks enjoy the highest level of protection. Id. A descriptive mark receives protection only if it has become distinctive by acquiring a secondary meaning because, standing on its own, the mark immediately conveys the meaning of a product. Duluth News-Tribune v. Mesabi Publ. Co., 84 F.3d 1093, 1096 (8th Cir. 1992). See also 20th Century Wear, Inc. v. Sanmark-Stardust., 747 F.2d 81, 87-88 (2d Cir. 1984) (finding "Cozy Warm ENERGY-SAVERS" to be descriptive). Suggestive marks benefit from some protection because they are highly distinct and require imagination to reach a conclusion regarding the nature of the product.  Mars, Inc., 159 F. Supp. 2d 1146, 1150. Plaintiff's marks qualify, at a minimum, as suggestive because the mark does not immediately convey the nature or function of Plaintiff's products and services.²

The second factor, similarity of marks, is determined by whether "the total effect conveyed by the two marks is confusingly similar." Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999). Defendant MA, LLC maintains a website where it identifies itself as "Merchants Advisory Group" and refers to itself as "MAG". Plaintiff asserts that Defendant targets the same credit card processing industry that Plaintiff MAG operates through representations such as "[w]ith many years in the bankcard industry we have put together an impressive portfolio of top-tier banks and processing companies." Horwedel Decl. [Docket No. 12-1] ¶¶ 8-9. Defendant's website also uses "MAG" to promote its expertise in credit card technologies, one of the primary services provided by Plaintiff for merchants in the payment services industry. Id. Defendants use of "Merchants Advisory Group" only differs from

---

² Plaintiff does not discuss the marks' commercial strength, which is determined by examining the public recognition and renown of the mark among "the class of customers and potential customers of a product or service."         Mohan, 2010 Lexis 124672 at *17.

Plaintiff's protected mark by one "s" and it's use of "MAG" is identical to Plaintiff's protected mark.  For these reasons, the parties' marks are similar and prone to confusion.

The third factor, the competitive proximity of the parties' products, also favors Plaintiff. Products are in competitive proximity when their sales, outlets, trade channels and customers either overlap or are similar.  J & B Wholesale Distrib. Inc. v. Redus Beverages, LLC, 621 F.Supp. 2d 678, 685-86 (D. Minn. 2007).  Here, Defendant's description of its services mirrors the services provided by Plaintiff.  As stated on Defendant's website:

> We welcome the opportunity to work with you, the merchant, in order to find the best solution for your business. With many years in the bankcard industry we have put together an impressive portfolio of top-tier banks and processing companies. Once we learn more about what you do and what your processing needs are, we tell you which business service would best suit your needs. Specifically, we focus on different industries and have spent countless hours to learn how each one really works, and what makes each one unique and prosper. This has allowed us to fully understand your business and also helps build the confidence that each of our satisfied clients and partners have in us when we create yopur [sic] strategic plan.
>
> MAG specializes in creating strategies to help companies understand and benefit from evolving and leading edge technologies in the areas of electronic payment processing and overall merchant business integration.
>
> MAG was developed by a group of seasoned business professionals. With a combined twenty years of retail and banking expertise, let MAG work for you to get the best processing solution available for your business needs.

This description is very similar to MAG's promotional materials, which includes the statements: "Driving positive change in the payments industry through collaboration and advocacy of merchants' interests" and "Make the MAG part of your business strategy.  Join the leading organization shaping the future of payments acceptance and gain a competitive advantage for your business."  See Horwedel Decl., Ex. A.  It is reasonable for participants in the payment processing industry, including merchants engaged in processing credit card payments, to assume

that an entity referring to itself as "MAG" or "Merchants Advisory Group" is affiliated with Plaintiff.

The fourth factor considers the alleged infringer's intent to confuse the public. "Where intent to confuse is present, it creates a powerful inference that confusion is likely to occur." Mohan, 2010 Lexis 124672 at *57 (internal citations omitted). In this case, evidence of Defendant's intent to cause confusion is found by the explicit use of "MAG" and "Merchants Advisory Group" to promote its services.

The fifth factor, evidence of actual confusion, is also apparent in this case. For example, when Plaintiff's Chief Executive Officer, Mr. Horwedel, attended an industry event sponsored by the Banking Administration Institute, the organizers of the event were confused and listed him in the program as representing Defendant MA, LLC. See Horwedel Decl., ¶ 12.

The sixth factor, the degree of care reasonably expected of the plaintiff's potential customers, requires consideration of the type of product, its cost, and conditions of purchase. Faegre & Benson LLP v. Purdy, 447 F. Supp. 2d 1008, 1016 (D. Minn. 2006). Courts must "stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." Mohan, 2010 Lexis 124672 at *63 (internal citations omitted). Courts have held that the "quick and effortless nature" of the internet makes it unlikely that online costumers will avoid confusion through the exercise of due care. Id. Plaintiff asserts that it is well known in the industry and has a positive reputation. Compl. at ¶ 12. Plaintiff contends that Defendant is "deliberately using MAG's marks to sow confusion within the payment card industry and to appropriate business opportunities within the industry by trading on MAG's good name." Id. 7. The

evidence in this case, as alleged by Plaintiff and uncontested by Defendant, sufficiently demonstrates that an ordinary purchaser would likely confuse Defendant's advertised services with services offered by Plaintiff.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Merchants Advisory Group, LLC shall immediately cease using the terms "MAG", "Merchants Advisory Group" or "MAG Merchant Advisory Group" or any similar term on any website or online forum referencing the payment processing industry, including, without limitation, the website located at http://magconsultants.com, and;

2. Defendant Merchants Advisory Group, LLC and all of its officers, members, attorneys, partners, servants, agents, associates, employees—and any persons acting in concert with them or otherwise at their direction—are permanently enjoined from making any use or employment, directly or indirectly, of the terms "MAG", "Merchants Advisory Group" or "MAG Merchant Advisory Group" in the promotion, sale or distribution of payment processing services.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 9, 2014.